1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES FEICK,<br><br>                    Plaintiff,<br><br>          v.<br><br>BRUTSCHE FAMILY REVOCABLE<br><br>TRUST ET AL,<br><br>                    Defendant. | Case No. 3:24-cv-05587-TMC<br><br>ORDER ON DEFENDANTS' MOTIONS<br>TO DISMISS |

## I.    INTRODUCTION

This case arises out of a long-standing dispute between pro se Plaintiff Charles Feick and Defendants Brutsche Family Revocable Trust and Steven Krohn (collectively "Trust Defendants") and Defendants Resource Transition Consultants and Kevin Hanchett (collectively "Receivership Defendants"). In 2011, Mr. Feick incorporated Green Harvest Corporation ("GHC") to produce and process marijuana. Leopold ("Pat") Channing Brutsche, then-trustee for the Brutsche Family Revocable Trust, invested in GHC and leased out property to use for its operations. Over several years, GHC's business declined, and Trust Defendants petitioned the state court to appoint a general receivership to liquidate GHC's assets. Receivership Defendants were appointed and sold GHC's cannabis license and property leased to GHC.

On July 22, 2024, Mr. Feick sued in this Court. Dkt. 1. He then filed an amended complaint, Dkt. 8, after U.S. Magistrate Judge David W. Christel directed him to do so, Dkt. 4. Mr. Feick alleges that all Defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(a)–(d), and seeks declaratory relief that Defendants unlawfully took his original investments from him. Mr. Feick moved for summary judgment on all claims. Dkt. 29. Trust Defendants and Receivership Defendants each moved to dismiss. Dkt. 30, 26. Trust Defendants argue that Mr. Feick lacks statutory standing and is barred by the statute of limitations from bringing his RICO claims. Receivership Defendants contend that the *Barton* doctrine precludes Mr. Feick from suing them.

The Court agrees with Defendants and GRANTS the motions to dismiss with respect to Mr. Feick's claims. Dkt. 30, 26. Mr. Feick's claims are DISMISSED with prejudice. Mr. Feick's motion for leave to file surreply and motion for summary judgment are DENIED as moot. Dkt. 36, 29. The Court, however, DENIES Trust Defendants' request for sanctions under 28 U.S.C. § 1927, concluding that sanctions may not be imposed for filing initial pleadings.

## II.    BACKGROUND

### A.    The Green Harvest Corporation is Formed

Mr. Feick incorporated GHC in 2011 to "engage in the business activity and expectancy of producing and processing marijuana in the State of Washington" once it became legal in the state. Dkt. 8 ¶ 23. In January 2013, Feick met Pat Brutsche, trustee for the Brutsche Family Revocable Trust ("Trust"), in Aberdeen, Washington. *Id.* ¶ 24. They discussed Mr. Feick's plans to obtain an industrial zoned facility to produce and process marijuana. *Id.* Pat Brutsche provided "suggestions for Feick's industrial parcel development based on current industrial zoned properties that the Trust own[ed]." *Id.* Pat Brutsche also explained that he was the sole trustee

1    and made "all decisions for the investment, development, and rental of the commercial

2    residential properties that are owned by the Trust." *Id.*

3          In April 2014, Mr. Feick contacted the Washington State Liquor and Cannabis Board

4    ("WSLCB") to "qualify potential GHC investment applicant members for approval by WSLCB

5    Licensing and Regulation Division." *Id.* ¶ 25. Between 2015 and 2016, Pat Brutsche bought

6    GHC stocks and the WSLCB approved his financial equitable contributions. *Id.* ¶¶ 11, 26. As

7    explained by the Washington Court of Appeals when upholding the state superior court's

8    decision to appoint a receiver, the Trust also leased GHC property to use for its operations.[1]

9    Dkt. 31-1 at 2. "Despite substantial investment and loans from shareholders," GHC was not

10   profitable and continued accruing debt and failing to pay its obligations. *Id.* None of the

11   shareholders received any return on their investments or payments on their loans. *Id.*

12   "Eventually, several shareholders became concerned with Feick's management" of GHC as he

13   kept requesting additional funds from shareholders and instructing vendors to seek payment

14   directly from the Trust instead of GHC. *Id.*

15

16

17   _____

     [1] Trust Defendants ask that the Court take judicial notice of filings and orders in the related state
18   court case under Federal Rule of Evidence 203. Dkt. 30 at 3 n.3. Trust Defendants also note that
     the Grays Harbor Superior Court's order appointing a general receiver, Dkt. 31-5, and orders
19   approving the sale of the cannabis license and real property, Dkt. 31-6, 31-7, are referenced in
     Mr. Feick's complaint and thus incorporated by reference. *Id.* at 7 n.9, 10. The Court "may take
20   notice of proceedings in other courts, both within and without the federal judicial system, if those
     proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens
21   Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotations omitted). The
     Court may also consider a document not physically attached to the complaint if the parties do not
22   contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d 449,
     454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d
23   1119 (9th Cir. 2002). Thus, while the Court takes the facts alleged in the amended complaint as
     true and construes them in the light most favorable to Mr. Feick, it also takes notice of the state
24   court filings requested by Trust Defendants. *See Retail Prop. Tr. v. United Bhd. of Carpenters &
     Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 3

On July 23, 2017, the WSLCB activated GHC's license for marijuana production and processing operations. Dkt. 8 ¶ 27. But the next day, Mr. Feick alleges that "Pat Brutsche conducted an illegal ultra vires takeover of [GHC] that abandoned the Business Plan that was approved by the SEC, WSLCB, and SEC Equity Shareholder's Agreements." *Id.*

## B.     State Court Litigation Ensues

On December 5, 2018, Mr. Feick filed a shareholder's derivative suit in Grays Harbor County Superior Court against six defendants, which included the Trust, Pat Brutsche, Michael Brutsche, Martha Carr, Charles Carr, and Creative Solutions Equipment, Inc. *Id.* ¶ 28. Mr. Feick asserts that he sued "to bring the defendants to justice after their failed company takeover 36 hours after WSLCB Licensing of the GHC." *Id.* In response, on March 27, 2019, the Trust moved to dismiss and petitioned for the appointment of a general receiver. *Id.* ¶ 29. Mr. Feick agreed that a receiver was necessary but argued that a custodial receiver, rather than a general receiver, was appropriate. Dkt. 31-1 at 5. While the case was pending, Pat Brutsche, who held 43.08 percent of equity shares in GHC, died. Dkt. 8 ¶ 30. In June 2019, Steven Krohn filed a declaration in support of the Trust's petition for appointment of general receivership that stated he was the new trustee for the Brutsche Family Revocable Trust. *Id.* ¶ 31.

Mr. Feick alleges that Krohn did not meet the state residency requirement and did not complete a criminal background check to act as a "true party of interest" in GHC. *Id.* ¶¶ 15, 31, 33, 35, 36, 37, 42. Specifically, Mr. Feick claims that "Krohn filed false declaration under penalty of perjury stating that he was an approved WSLCB true party of interest to represent the Trust to proceed against Feick and GHC." *Id.* ¶ 33.

On June 19, 2019, the Grays Harbor Superior Court approved and granted the petition for appointment of general receivership and Feick was removed from participating in GHC operations. *Id.* ¶¶ 32, 43; *see* Dkt. 31-5. In that order, the court appointed Resource Transition

Consultants ("RTC") as the general receiver and authorized it "to collect, settle, and compromise and otherwise liquidate any and all rents, issues, profits, income, revenues, accounts, or proceeds of the Assets . . . without further order of this Court[.]" Dkt. 31-5 at 2, 4. On July 6, 2020, RTC asked the court to approve a settlement agreement between GHC and the Trust and dismiss Mr. Feick's derivative claims. Dkt. 8 ¶ 50. The court granted RTC's motion and dismissed Mr. Feick's derivative claims. *Id.* ¶ 56. Mr. Feick filed a motion for reconsideration which was denied. *See* Dkt. 31-1 at 11–13. On October 15, 2021, RTC moved to approve final accounting, discharging the receiver, terminating the receivership, and dissolving the corporation. Dkt. 8 ¶ 58. On November 15, 2021, the motion was granted, and the receivership was terminated. *Id.* ¶ 60.

Mr. Feick filed his first appeal of the superior court's decision to approve the settlement agreement between GHC and the Trust on September 20, 2020. *Id.* ¶ 57. This appeal was unsuccessful. *See* Dkt. 31-1. Mr. Feick then filed four appeals with the court of appeals and three to the Washington Supreme Court based on this underlying superior court order. *See id.* ¶ 64(B)–(G). Mr. Feick also petitioned for certiorari to the U.S. Supreme Court, which was denied. *See* Dkt. 31-16. The superior court twice sanctioned Feick for pursuing "frivolous" and "baseless" claims and imposed monetary fines. *See* Dkt. 31-9, 31-12. On February 2, 2024, the Washington Supreme Court barred Feick from filing "any further pleadings in any appellate court in any case arising from the underlying superior court case or dispute until all outstanding sanctions are paid." Dkt. 31-13.

## C.    Procedural Background

Mr. Feick filed this lawsuit on July 22, 2024, and moved for leave to proceed *in forma pauperis* ("IFP"). Dkt. 1. After Judge Christel reviewed Mr. Feick's proposed complaint, he determined that it failed to state a claim, and ordered Mr. Feick to file an amended complaint.

Dkt. 4. During this time, Feick initiated another case related to the underlying facts, *Feick v. State of Washington et al.* (3:24-cv-05603), where U.S. Magistrate Judge Grady Leupold granted Mr. Feick's motion to proceed IFP. Dkt. 4. Judge Christel noted in his order granting Mr. Feick IFP status that "based on the allegations in the proposed amended complaint, the undersigned recommends review under 28 U.S.C. § 1915(e)(2)(B)." Dkt. 7 at 2. Shortly after, Mr. Feick filed his amended complaint. Dkt. 8. Trust Defendants and Receivership Defendants moved to dismiss. *See* Dkt. 30, 26. In their motion to dismiss, Trust Defendants requested that the Court impose sanctions under 18 U.S.C. § 1927. Dkt. 30 at 15. Mr. Feick then moved for summary judgment and to file a surreply with respect to Receivership Defendant's motion to dismiss. Dkt. 29, 36. Mr. Feick responded to both motions to dismiss, *see* Dkt. 40, 27, and all Defendants replied, *see* Dkt. 34, 42. The motions are ripe for the Court's consideration.

### III.    LEGAL STANDARD

**A.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    Rule 12(b)(1)**

A Rule 12(b)(1) motion seeks dismissal of a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Such challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* Where, as here, the Court responds to a facial attack, the Court will resolve the challenge "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

# IV.    DISCUSSION

**A.    Trust Defendants' Motion to Dismiss**

1.    *Mr. Feick lacks statutory standing.*

The RICO Act confers standing on "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). That person "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" *Id.* "The required elements of a RICO private civil action are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1271 (9th Cir. 2023) (cleaned up).

Trust Defendants contend that Mr. Feick lacks standing to bring his RICO claims because his claimed injuries stem from his cannabis business. Dkt. 30 at 11–12. To start, they argue that Mr. Feick must show that he has suffered an injury to "his business or property by reason of a violation of Section 1962." *Id.* at 11 (first citing 18 U.S.C. § 1964(c); and then citing *Shulman v. Kaplan*, 58 F.4th 404, 410 (9th Cir. 2023)). Trust Defendants then assert that Mr. Feick's alleged injuries are the "lost profits from sale of Green Harvest's 'marijuana site property' and operation of the Green Harvest's marijuana license." *Id.* But, they argue, the Ninth Circuit in *Shulman v. Kaplan*, clarified that "Congress did not intend 'business or property' to cover cannabis-related commerce" because "the use, cultivation, distribution, and sale of cannabis" remain clearly illegal under federal law. *Id.* at 12 (quoting 58 F.4th at 411). Trust Defendants conclude, that "[l]ike the cannabis farmer in *Shulman*, Feick's RICO claims are for injuries arising from a cannabis related business and property, which is insufficient to establish standing to assert such claims" and should be dismissed. *Id.*

Mr. Feick responds that *Shulman* does not apply because the "Ninth Circuit has previously created precedent for personal injury damages suits under the Rico Act statute." Dkt. 40 at 2 (first citing *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006); and then citing *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005)). Mr. Feick asserts that he "has alleged personal injury for having to acquire legal expenses that he did not have, for a court case that went on prematurely without a final agency action allowing the out-of-state owner to operate a marijuana company that Feick himself founded [which] is a financial loss equivalent to 'the personal injury' in *Dia[z]*." *Id.* at 3. Mr. Feick maintains that "the current standard in the Ninth Circuit is that a personal injury and damages claim, such as the one Feick has made in his complaint, can be made under a [RICO] Act statute." *Id.* at 2.

The Court disagrees with Mr. Feick. In *Diaz*, the Ninth Circuit held that false imprisonment which caused the plaintiff to lose his current employment and future employment opportunities was an injury to "business or property" under the RICO Act. 420 F.3d at 900. Similarly, the Ninth Circuit in *Guerrero* applied its *Diaz* holding and concluded that the plaintiff had adequately alleged an injury under RICO based on "lost employment prospects during his alleged wrongful incarceration." 442 F.3d at 707. These cases are inapplicable here because Mr. Feick does not allege similar injuries to the plaintiffs in *Diaz* and *Guerrero*, such as loss of income based on wrongful incarceration. *See generally* Dkt. 8.

Additionally, neither case establishes RICO standing for personal injuries. *See* Dkt. 40 at 14. In fact, the Supreme Court has affirmed that the RICO Act does not confer standing for personal injuries. *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 350 (2016) ("If anything, by cabining RICO's private cause of action to particular kinds of injury—excluding, for example, personal injuries—Congress signaled that the civil remedy is not coextensive with § 1962's substantive prohibitions.").

Instead, *Shulman* is instructive here. In *Shulman*, the plaintiff alleged that the defendants "devised a racketeering scheme to defraud them, committed acts of mail and wire fraud, and injured them in 'their business and property, because their moneys, profits, and property' from their cannabis enterprise 'have been wrongly diverted to and converted by'" the defendants. 58 F.4th at 411. The Ninth Circuit considered whether "'business or property' must encompass businesses and property engaged in the cultivation, sale, and marketing of cannabis—an enterprise that is legal under California law, but illegal under federal law." *Id.* at 410. Based on the statutory text and history, the Ninth Circuit concluded, "it is clear that Congress did not intend the term 'business or property' in RICO to include cannabis businesses or property." *Id.* at 411. Because all of Mr. Feick's alleged injuries—"damages to Feick's company and damages to him personally"—arise from his cannabis business, Mr. Feick cannot bring these claims under the RICO Act. *See id.*; Dkt. 40 at 15; Dkt. 8 ¶¶ 66–89.

2.     *Mr. Feick's RICO claims are barred by the four- year statute of limitations.*

Trust Defendants argue that RICO claims are subject to a four-year statute of limitations that begins upon discovery of the injury. Dkt. 30 at 12 (citing *Evans v. Arizona Cardinals Football Club, LLC*, 761 F. App'x 701, 703 (9th Cir. 2019)). They contend that Feick's alleged injuries occurred no later than June 12, 2019 (when Krohn filed a declaration asking the superior court to appoint a receiver) or June 19, 2019 (when the superior court appointed the receiver). *Id.* at 12–13. Even if the Court uses the date of June 29, 2020, when the superior court approved the sale of the property GHC leased and the cannabis license, Trust Defendants argue that "Feick's claims are still outside the limitation period by several weeks." *Id.* at 13.

Mr. Feick contends that "[u]nder the separate accrual rule, an overt act will start a new limitations period if it is 'a new and independent act that is not merely a reaffirmation of a previous act' and it 'inflict[s] new and accumulating injury on the plaintiff.'" Dkt. 40 at 17

(quoting *Grimmett v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996)). Thus, Mr. Feick maintains that the "statute of limitations should be tolled from the new court appearances and briefing or the separate court orders, which created a new and separate injury to Feick for separate court filings[.]" *Id.* at 16. Mr. Feick points to thirty filings Trust Defendants made in state court as predicate acts that he argues tolled the statute of limitations. *See id.* at 17–30. As further support, Mr. Feick asserts that in "the U.S. Ninth Circuit, the Courts have ruled each separate billing process is a new accumulating injury." *Id.* at 16–17 (citing *Molus v. Swan*, No. CIV 05CV452-MMA WMC, 2009 WL 160937, at *4 (S.D. Cal. Jan. 22, 2009)).

The Court again disagrees with Mr. Feick. The RICO limitations period uses what courts refer to as the "injury discovery rule." *Grimmett*, 75 F.3d at 510. To start, under the rule, the "RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* (cleaned up). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Id.* (citation omitted). Thus, applying the four-year statute of limitations, the predicate acts of Mr. Feick's RICO claims must have occurred after July 22, 2020.

"The second part of the 'injury discovery' rule is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Id.* (citation omitted). For the separate accrual rule to apply, the plaintiff must allege an "overt act" within the limitations period that is: (1) "a new and independent act that is not merely a reaffirmation of a previous act;" and (2) "must inflict new and accumulating injury on the plaintiff[.]" *Id.* at 513 (cleaned up).

Mr. Feick's allegations and information subject to judicial notice show that he learned of the injuries underlying the RICO claims more than four years before filing his complaint in

federal court. *See generally* Dkt. 8; *see also* Dkt. 31-1. Mr. Feick's core allegation is that "[Trust Defendants] violated federal laws to create personal profit for themselves causing damage to Feick's company and damages to him personally." Dkt. 8 at 1. But each of the alleged underlying actions occurred before July 22, 2020. For example, the superior court's order appointing a general receiver is dated June 19, 2019. *See* Dkt. 31-5. And the superior court's orders approving the receiver's sale of GHC leased property and approving the receiver's sale of the right to assume the cannabis license were issued on June 29, 2020. *See* Dkt. 31-6, 31-7.

Mr. Feick next claims that each of Trust Defendants' filings in state court constituted a "new and independent injury" that restarted the four-year statute of limitations. *see* Dkt. 40 at 3–4. But the state court filings are "merely a reaffirmation of a previous act" that does not inflict a "new and accumulating injury." *See Grimmett*, 75 F.3d at 513 (cleaned up). In *Hunter v. Union Corporation*, the plaintiff argued that the separate accrual rule applied to allegedly false reports filed to the IRS for a nineteen-year period. 94 F.3d 651 (9th Cir. 1996). But the Ninth Circuit disagreed, holding the separate accrual rule inapplicable because the plaintiff "offers nothing to distinguish those allegedly false reports filed inside of the limitations period from those filed outside of the limitations period." *Id.* Like the plaintiff in *Hunter,* Mr. Feick does not show how Trust Defendants' filings in state court are anything other than actions supporting the appointment of a general receiver to liquidate GHC's assets. *See id.*

Mr. Feick cites *Molus v. Swan* in support of his argument that the state court filings restart the statute of limitations. *See* Dkt. 40 at 16–17. But in *Molus*, the district court did not hold that the separate invoices the defendants sent to the plaintiffs were new accumulating injuries. 2009 WL 160937, at *7. There, the plaintiffs "allege[d] that they received a billing invoice from [the defendant] . . . which constituted a 'new and independent injury.'" *Id.* at *5. The defendants argued that the alleged invoice was actually "an accounting showing the amount

of money which had been paid out of the client trust account" and so did not "qualify as a new and independent injury but rather affirms previous payments out of Plaintiffs' client trust account." *Id.* at \*6. The court agreed and granted summary judgment for the defendants. *Id.* at \*7.

Mr. Feick fails to show that he learned of his injuries within the limitations period or that Trust Defendants committed an overt act that inflicted new and accumulating injury on him so that the separate accrual rule applies. *See Grimmett*, 75 F.3d at 513; *Chang v. Farmers Ins. Co., Inc.*, 648 F. Supp. 3d 1174, 1180 (C.D. Cal. 2022) (dismissing the plaintiffs' RICO claims because they "fail to identify which, if any, of [the defendants'] acts constitutes a new overt act inflicting a new injury within the limitations period."). Accordingly, since Mr. Feick lacks standing, *see supra* Sec. IV.A.1, and is barred by the statute of limitations, the RICO claims are DISMISSED with prejudice.

### 3.    Mr. Feick's claim for declaratory judgment also fails.

Trust Defendants argue that because "Feick's RICO claims fail, his declaratory judgment claim also fails for lack of jurisdiction under Rule 12(b)(1) and to state a claim for relief under Rule 12(b)(6)." Dkt. 30 at 14–15.

"When presented with a claim for a declaratory judgment . . . federal courts must take care to ensure the presence of an actual case or controversy[.]" *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). "This is because the Declaratory Judgment Act creates only a remedy, not a cause of action." *McKee v. Gen. Motors Co.*, 601 F. Supp. 3d 901, 910 (W.D. Wash. 2022), *aff'd*, No. 22-35456, 2023 WL 7318690 (9th Cir. Nov. 7, 2023) (cleaned up). In other words, "[w]ithout an underlying cause of action, there is no claim for declaratory relief." *Id.* (cleaned up).

For the reasons explained above, Mr. Feick's RICO claims are foreclosed by his lack of standing and the statute of limitations. *See supra* Sec. IV.A.1–2. Since there are no remaining underlying causes of action, Mr. Feick's claim for declaratory relief is DENIED with prejudice.

> 4.    *Trust Defendants' request for sanctions is denied.*

Trust Defendants request that the Court impose sanctions on Mr. Feick under 28 U.S.C. § 1927 for "his frivolous pleadings and weaponization of the legal system to engage in a personal vendetta against the Trust Defendants." Dkt. 30 at 15.

28 U.S.C. § 1927 provides that "[a]ny . . . person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Ninth Circuit has held that "[b]ecause the section authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (cleaned up). Thus, the Ninth Circuit has been clear that "§ 1927 cannot be applied to an initial pleading." *Id.*; *see Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.), *opinion amended on denial of reh'g sub nom. In re Yagman*, 803 F.2d 1085 (9th Cir. 1986) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings.").

Here, Trust Defendants seek to sanction Mr. Feick for filing a complaint in this Court "as a matter of comity with the state courts." Dkt. 30 at 15. Even though courts have sanctioned pro se litigants, it is because the litigant "continually mov[ed] for alterations in the district court's original judgment despite [the] court's clear unwillingness to change its mind" and "evidenced bad faith in multiplying the proceedings in [the] case unreasonably and vexatiously." *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (internal quotation omitted); *see Wood v. Santa*

*Barbara Chamber of Com., Inc.*, 699 F.2d 484, 485 (9th Cir. 1983) (imposing Section 1927 and Rule 11 sanctions on a pro se plaintiff who filed "frivolous, vexatious, and entirely unmeritorious" pleadings and motions). In this case, while Mr. Feick has filed numerous appeals in state courts, he has not "unreasonably or vexatiously" multiplied the proceedings here. *See Wages*, 915 F.2d at 1235. He has only filed a complaint in this Court and because Section 1927 does not permit sanctions based on initial pleadings, *see Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435, the request for sanctions is DENIED.

**B.      Receivership Defendants' Motion to Dismiss**

      *1.      Mr. Feick's claims are barred by the Barton doctrine.*

Receivership Defendants argue that under the *Barton* doctrine, "before a suit can be brought against a court-appointed receiver, leave of the court by which the receiver was appointed must be obtained." Dkt. 26 at 3 (citing *Barton v. Barbour*, 104 U.S. 126, 127 (1881)). They contend that the "Supreme Court reasoned that prior approval from the appointing court is necessary to ensure a consistent and equitable administration of the receivership, and to preserve the authority of the receivership court." *Id.* (citing Barton, 104 U.S. at 128–29). Therefore, "failure to obtain leave from the appointing court, prior to filing a lawsuit against the receiver, deprives the nonappointing court of subject matter jurisdiction over that lawsuit." *Id.* Here, since Mr. Feick did not obtain leave from the superior court to sue Receivership Defendants, they ask that the Court dismiss Mr. Feick's complaint for lack of subject matter jurisdiction. *Id.* at 4.

In response, Mr. Feick argues that Receivership Defendants have "provided no proof to this Court that the GHC Superior Court and WSLCB gave authority to operate two court appointed receiverships of the WSLCB Licensed Green Harvest Corporation[.]" Dkt. 27 at 2. Mr. Feick contends that the GHC Superior Court merely granted receivership, not a ruling that Defendants had complied with "federal law, state law, and with WSLCB requirements by

proceeding with an out-of-state resident as a True Party of Interest." *Id.* at 3. Mr. Feick then argues that the Court has jurisdiction to adjudicate his claims because "the *Barton* Doctrine does not provide the blanket immunity to RTC/Hanchett to deprive this court of jurisdiction, because the court orders they claim gives them absolute immunity, does not address the issue of compliance with WSLCB procedures and running a marijuana company with an out of state owner." *Id.* at 13.

In their reply, Receivership Defendants argue that Mr. Feick's arguments are based on two incorrect contentions—that RTC was operating GHC, a cannabis company without authority and that RTC was operating the business with Steve Krohn, an out of state resident in violation of WSLCB regulations. Dkt. 34 at 1. They maintain, "RTC complied with the Superior Court's order. The WSLCB approved RTC as the general receiver of GHC. The WSLCB's approval is reflected by (1) the updated endorsement to GHC's business license which reflects RTC as the party in interest, and (2) the WSLCB's subsequent approval of RTC's assignment of GHC's cannabis license to a third party." *Id.* at 3.

"[T]he *Barton* doctrine, established by the Supreme Court over a century ago, [] provides that, before suit can be brought against a court-appointed receiver, 'leave of the court by which he was appointed must be obtained.'" *In re Crown Vantage, Inc.*, 421 F.3d 963, 970–71 (9th Cir. 2005) (quoting *Barton*, 104 U.S. at 127). "The [*Barton*] Court held that if leave of court were not obtained, then the other forum lacked subject matter jurisdiction over the suit. . . . Part of the rationale underlying *Barton* is that the court appointing the receiver has in rem subject matter jurisdiction over the receivership property." *Id.* at 971 (internal citation omitted). "As the Supreme Court explained, allowing the unauthorized suit to proceed would have been a usurpation of the powers and duties which belonged exclusively to another court." *Id.* (cleaned up).

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 16

Still, there is a limited statutory exception codified at 28 U.S.C. § 959(a) which provides that "[t]rustees, receivers or managers of any property, including debtors-in-possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." *Id.* (quoting 28 U.S.C. § 959(a)). But this exception applies "only if the trustee or other officer is actually operating the business, and only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *Id.* at 971–72 (cleaned up). Notably, "the fact that the officer involved is not a bankruptcy trustee, but rather a liquidating trustee" does not affect the application of the *Barton* doctrine. *Id.* at 973.

The Court agrees with Receivership Defendants that the *Barton* doctrine governs this case. First, the allegations in Mr. Feick's complaint are entirely based on RTC and Hanchett's role as the general receiver in the underlying state court proceeding. *See Cath. Bishop of Spokane v. Paine Hamblen, LLP*, No. 12-CV-0583-TOR, 2013 WL 11319241, at *2 (E.D. Wash. May 15, 2013) (concluding that case must be dismissed because "[the plaintiff] did not obtain leave from the bankruptcy court to bring this action as required under *Barton*").

Second, Mr. Feick has asserted no facts to show that Receivership Defendants exceeded their authority granted by the appointing court. In its order appointing RTC and Hanchett as the general receiver, the superior court authorized them to "collect, settle, and compromise and otherwise liquidate any and all rents, issues, profits, income, revenues, accounts, or proceeds of the Assets for or on account of the Company's operations or the Assets, without further order of this Court or, in the Receiver's sole discretion, with Court approval on notice and hearing including an ex parte basis." Dkt. 31-5 at 4. The later court orders approving Receivership Defendants' motion for authorization to sell property, *see* Dkt. 31-6, and motion for authorization to allow an application for assumption of license, *see* Dkt. 31-7, show that the

appointing court found their actions to be within the authority it had granted. Even Mr. Feick concedes that "[o]n November 15, 2021 . . . the Grays Harbor Superior Court Judge Svoboda sign[ed] Order Granting Receiver's Motion Approving Final Accounting, Discharging Receiver, Terminating Case, and Dissolving Corporation." Dkt. 8 ¶ 60.

    Third, Mr. Feick fails to allege any facts that Receivership Defendants "actually operat[ed]" GHC such that the exception under 28 U.S.C. § 959(a) would apply. *See Crown Vintage Inc.*, 421 F.3d at 971. Receivership Defendants' only actions were to liquidate GHC assets as they were appointed to do. *See* Dkt. 31-6; Dkt. 31-7.

    It is undisputed that Mr. Feick did not obtain leave of the superior court before suing Receivership Defendants for actions done in their official capacity. *See Crown Vintage Inc.*, 421 F.3d at 970. Accordingly, under the *Barton* doctrine, this Court lacks subject matter jurisdiction over the claims in the suit. The Court thus GRANTS the motion to dismiss without prejudice. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").

## C.    Leave to Amend is Futile

    The Court declines to grant Mr. Feick additional leave to amend his dismissed claims. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Here, Mr. Feick has already amended his complaint once. *See* Dkt. 8. And amendment would be futile because the "underlying facts" do not "provide proper grounds for relief," and the Court cannot "conceive of facts that would render" Mr. Feick's dismissed claims "viable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (cleaned up); *see also Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without

leave to amend is improper unless it is clear . . . that the complaint could not be saved by any

amendment.") (cleaned up). Accordingly, the Court will not grant Mr. Feick leave to amend.

## V.    CONCLUSION

For the reasons explained above, it is hereby ORDERED that:

- Trust Defendants' motion to dismiss (Dkt. 30) is GRANTED in part and DENIED in part. The Court DISMISSES with prejudice all claims against Trust Defendants but DENIES the request for sanctions.

- Receivership Defendants' motion to dismiss (Dkt. 26) is GRANTED. The Court DISMISSES without prejudice all claims against Receivership Defendants.

- The Court DENIES Mr. Feick leave to amend his complaint. His motion for summary judgment (Dkt. 29) and motion for leave to file surreply (Dkt. 36) are DENIED as moot.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing pro se at said party's last known address.

Dated this 24th day of April, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 19